### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF KENTUCKY
### PADUCAH DIVISION
### CASE NO. 5:08-CV-00034-R

**JOSEPH SHAHEEN,**                                                        **PLAINTIFF**
**Ancillary Administrator of the Estate of**
**NADIA SHAHEEN, deceased**

**v.**

**PROGRESSIVE CAS. INSUR. CO.**                                      **DEFENDANT**

### MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's motion to compel discovery responses from

Defendant (DN 32).   Defendant has responded (DN 36) and Plaintiff has replied (DN 37).   This

matter is now ripe for adjudication.   For the reasons that follow, Plaintiff's motion is granted in

part and denied in part.   The Court will conduct an *in camera* review of the insurance file at issue

to determine whether certain portions Defendant has withheld are protected by the attorney-client

privilege.

Also before the Court are Defendant's motions for summary judgment (DN 42) and for an

extension to file other dispositive motions (DN 41).   The Court will deny both motions with leave

for the parties to refile at a later date.   The Court will also vacate the current schedule.   A new

schedule shall be released once the Court has conducted the review of the insurance file and ruled

on the issues of discoverability.

### BACKGROUND

This is a third-party bad faith claim between Defendant Progressive Casualty Insurance

Company ("Progressive") and Plaintiff Joseph Shaheen ("Plaintiff"), who is the administrator of

Nadia Shaheen's ("Shaheen") estate.   Plaintiff filed the action on March 4, 2008, citing violations

1

of Kentucky's Uniform Claims Settlement Practices Act ("UCSPA"), KRS § 304.12-230.   The

gravamen of Plaintiff's allegations is Progressive impermissibly delayed payment on Plaintiff's

claim against an insurance policy purchased by Burgess Harrison Yonts's ("Yonts").

     The instant action has its origins in a fatal car accident near Murray, Kentucky.   In the

early hours of November 11, 2005, Yonts struck Shaheen with his car as she was walking along the

side of the road.   Shaheen suffered grievous injuries and died as a result.   Yonts was legally

intoxicated when his car struck Shaheen.   Criminal charges were brought against Yonts and he

was eventually convicted in state court of wanton murder.   On October 17, 2006, Plaintiff

initiated a civil action in this Court against Yonts and other parties for the wrongful death of

Shaheen ("underlying action").

     Yonts was insured by Progressive at the time of the accident.   Progressive retained

counsel to represent Yonts, as was required by the insurance agreement.   Between March and

April of 2007, Plaintiff and Yonts's attorney engaged in settlement negotiations.   On March 20,

2007, Plaintiff made a demand that Progressive unconditionally pay $250,000, the limit for the

insurance policy.   Yonts's attorney countered that such an amount would be paid if Plaintiff

would agree to dismiss and release all claims against Yonts.   Plaintiff rejected the counteroffer on

June 5, 2008.   The underlying action continued until April 19, 2009, when Progressive tendered

the policy limit unconditionally.   Judgment was entered in excess of the policy coverage on

August 14, 2010, and satisfaction of judgment was entered on October 18, 2010.

     Shaheen's own vehicle was insured by Progressive as well.   Plaintiff made similar

demands of Progressive regarding her own policy's uninsured/underinsured motorist coverage

("UIM claim").   In March of 2007, Progressive unconditionally paid the policy limit of $25,000

2

for Shaheen's uninsured/underinsured motorist coverage.

The current lawsuit is a third-party bad faith action under the UCSPA.   Plaintiff asserts that Progressive's unreasonably chose not to pay the full limit on Yonts's policy even though liability was never in question.   During discovery, Plaintiff has sought disclosure of the insurance file Progressive created during the underlying action.   He alleges that the file contains important and probative information on Progressive's bad faith refusal to unconditionally settle the claim. Progressive has refused to produce nearly half of the file and raised numerous objections to Plaintiff's interrogatories and requests for production, citing the attorney-client and work-product privileges.   In its response to this motion, Progressive claims the insurance file is replete with documents memorializing communications between Yonts and insurance representatives. Progressive declares that these correspondences, along with documents its attorneys created during the underlying action, are protected under federal and state privilege law.

## STANDARD

Determining "the scope of discovery is within the sound discretion of the trial court." *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981).   Under Rule 37(a)(1), "a party may move for an order compelling disclosure or discovery."   Fed. R. Civ. Pro. 37(a)(1). Motions to compel discovery responses are authorized where a party fails to provide proper responses to interrogatories under Rule 33 or requests for production of documents under Rule 34. Fed. R. Civ. Pro. 37(a)(3)(B)(iii), (iv).   Still, discovery requests are not limitless.   "Although a plaintiff should not be denied access to information necessary to establish her claim, neither may a plaintiff be permitted 'to go fishing and a trial court retains discretion to determine that a discovery request is too broad and oppressive.'"   *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th

3

Cir. 2007) (quoting *Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir. 1978)).

## DISCUSSION

## I. Attorney-Client Privilege and Third-Party Bad Faith Actions

"In a diversity case, the court applies federal law to resolve work product claims and state law to resolve attorney-client claims."   *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 472 (6th Cir. 2006) (citations omitted).   The attorney-client privilege attaches to a "confidential communication 'made to facilitate the client in his/her legal dilemma and made [either by] . . . the client, the client's representatives, the lawyer, or the lawyer's representatives.'"   *St. Luke Hospitals, Inc. v. Kopowski*, 160 S.W.3d 771, 776 (Ky. 2005) (quoting *Haney v. Yates*, 40 S.W.3d 352, 355 (Ky. 2001)).   "A communication is 'confidential' if not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication."   Ky. R. Evid. 503(a)(5).   Though broad claims of privilege are discouraged "when balanced against the need for litigants to have access to relevant or material evidence", *Meenach v. General Motors Corp.*, 891 S.W.2d 398, 402 (Ky. 1995) (citing *United States v. Nixon,* 418 U.S. 683 (1974)), "the privilege is not overridden by necessity or lack of available alternative sources."   *Kopowski*, 160 S.W.3d at 777.

Claims of attorney-client privilege often collide with legitimate requests for discovery in bad faith litigation.   Common law claims of bad faith generally fall into two categories: (1) first-party bad faith claims, where the insured sues the insurer for failing to use good faith to resolve a claim brought by the insured, and (2) third-party bad faith claims, where the victim of the insured's tortious behavior sues the insurer for failure to settle the previous claim against the

4

insured.   *See Guaranty Nat. Ins. Co. v. George*, 953 S.W.2d 946, 950 (Ky. 1997).   For discovery

requests in first-party cases, because the insurance file is created on behalf of the insured, the entire

file is typically discoverable by the plaintiff.   *See Dumas v. State Farm Mut. Auto. Ins. Co.*, 274

A.2d 781 (N.H. 1971); *Groben v. Travelers Indem. Co.*, 49 Misc. 2d 14, 15 (N.Y. Sup. Ct. 1965);

*Chitty v. State Farm Mut. Auto. Ins. Co.*, 36 F.R.D. 37 (D.S.C. 1964).

      Questions of privilege are less definite in third-party bad faith actions and the discovery of

the insurance file created during the previous litigation is a complicated issue.   On one hand,

almost all of the evidence of an insurer's potential bad faith in failing to settle was created either

proceeding up to or during legal action against the insured.   Thus, much of the insurance file

maintained by the insurer necessarily raises issues of attorney-client and work-product privilege.

*Cf. Bellmann v. District Court of Cnty. of Arapahoe*, 531 P.2d 632, 634 (Colo. 1975).   On the

other hand, the evidence that would most assist the plaintiff to show bad faith on the part of the

insurer is the communications between the insured, insurer, and the attorney in the insurance file.

"Often, the plaintiff in a third-party bad faith suit has no reasonable means of proving his or her

claim without the benefit of certain documents contained in the claim file."   *See State ex rel.*

*Allstate Ins. Co. v. Gaughan*, 508 S.E.2d 75, 91 (W.Va. 1998).   Courts are caught between the

competing interests of protecting privileged communications and supplying the plaintiffs with

relevant evidence to their suits.

      Recognizing the difficulty lower courts have weighting these issues, appellate courts

around the country have attempted to offer guidance.   They take varying approaches on the

degree to which the insurance file is discoverable in a third-party bad faith claim.   Some

jurisdictions permit discovery of the entire file.   *See Allstate Indem. Co. v. Ruiz*, 899 So. 2d 1121

(Fla. 2005); *Dunn v. National Sec. Fire and Cas. Co.*, 631 So.2d 1103 (Fla. Dist. Ct. App. 1993). Others rigidly apply the attorney-client privilege and provide standing for insurers to assert the privilege and prevent disclosure.   *See e.g.*, *Twin City Fire Ins. Co. v. Burke*, 63 P.3d 282 (Ariz. 2003); *Hartford Fin. Serv. Grp., Inc. v. Lake Cnty. Park & Recreation Bd.*, 717 N.E.2d 1232 (Ind. Ct. App. 1999); *State ex rel. U.S. Fidelity & Guar. Co. v. Montana Second Judicial Dist. Court*, 783 P.2d 911 (Mont. 1989).   West Virginia has adopted a modified attorney-client privilege that permits the insurer to withhold privileged portions of the insurance file to the extent the plaintiff cannot show a compelling need for the material, but only where the insured has executed a release for the file.   *Gaughan*, 508 S.E.2d at 91.   To date, the Kentucky Supreme Court has not squarely ruled on the issue.

Notwithstanding Kentucky's silence, the state's precedent is clear that an insurer enjoys at least some ability to withhold portions of the insurance file on the basis of the attorney-client privilege.   On three occasions, the Kentucky Supreme Court reviewed the limits of discovery in third-party bad faith claims against insurers.   *See Grange Mut. Ins. Co. v. Trude*, 151 S.W.3d 803 (Ky. 2004); *Riggs v. Schroering*, 822 S.W.2d 414 (Ky. 1991); *Terrell v. Western Cas. & Sur. Co.*, 427 S.W.2d 825 (Ky. 1968).   None of these cases confronted the limits of discovery in the context of claims of attorney-client privilege.   In *Riggs* however, the court recognized that discovery requests in a third-party claim necessarily implicated the attorney-client privilege for the insurer. *Riggs*, 822 S.W.2d at 415 ("The real question presented is what type of discovery limitations are needed to restrict the scope of the examination of the attorneys as necessary to protect the attorney/client privilege.").   The court skirted the issue because the parties agreed in advance of the appeal that they would not attempt discovery beyond the limits of the privilege.   *Id*.   The

6

language from *Riggs* illustrates however that discovery in third-party bad faith claims is influenced by legitimate claims of privilege.

Additionally, at least one Kentucky Court has declined to create an express exception to the attorney-client privilege in bad faith litigation.   In *Guaranty Nat. Ins. Co. v. George*, 953 S.W.2d 946 (Ky. 1997), the Kentucky Supreme Court reviewed a decision by the Kentucky Court of Appeals reversing the grant of summary judgment at the trial court on a claim of first-party bad faith.   *Id*. at 947-48.   The plaintiffs appealed two issues: if summary judgment was appropriate and whether the trial court erred when it rejected the plaintiff's request to discover a correspondence written during the underlying coverage claim between the insurer's attorney and the insurer.   *Id*. at 948.   The court of appeals rejected the plaintiff's contention that an exception to the attorney-client privilege necessarily arose when a claim of bad faith was alleged:

> To develop an exception in bad faith cases against insurers would impede the free flow of information and honest evaluation of claims. In the absence of fraud or criminal activity, an insurer is entitled to the attorney-client privilege to the same extent as other litigants.

*Id*. at 948 (quoting *George v. Guaranty Nat'l Insur. Co.*, No. 95-CA-1577-MR (Slip Op. Mar. 8, 1996)).   Kentucky's highest court failed to reach the privilege issue because it concluded summary judgment was properly granted.   Though the question of privilege in *George* arose in a different context, the appeals court's decision is the best guidance on the state of Kentucky law and whether bad faith actions by their very nature subvert the privilege.

Further, Kentucky extends the attorney-client privilege to the conversations between an insured and the insurer.   *See Haney v. Yates*, 40 S.W.3d 352 (Ky. 2000); *Asbury v. Beerbower*, 589 S.W.2d 216 (Ky. 1979).   The Kentucky Supreme Court first adopted the privilege in *Ashbury*, where a third-party attempted to discover statements that passed between an insured and insurer

7

following an automobile accident.   *Asbury*, 589 S.W.2d at 216.   The court recognized the privilege on the basis that it was safe for the insured to assume the dominant purpose for a communication with the insurer was to transmit information to an insurer-selected attorney for the pending litigation.   *Id.* at 217.

Courts inside and outside this state's borders have acknowledged multiple exceptions and limitations to the insured-insurer communications privilege.   *See e.g.*, *GuideOne Specialty Mut. Ins. Co. v. Congregation Bais Yisroel*, 381 F. Supp. 2d 267, 280 (S.D.N.Y. 2005) (privileged items are discoverable in litigation between the insurer and insured because privilege is waived in litigation between parties sharing a common interest); *Pennsylvania Cas. Co. v. Elkins*, 70 F. Supp. 155, 157 (E.D. Ky. 1947) (same); *Haney*, 40 S.W.3d at 355-56 (privilege does not apply to self-insured businesses not engaged in the business of "risk shifting"); *Morton v. Bank of the Bluegrass & Trust Co.*, 18 S.W.3d 353, 360-61 (Ky. Ct. App. 1999) (crime-fraud exception affects whether communications between insured and insurer are privileged); *Central Const. Co. v. Home Indem. Co.*, 794 P.2d 595, 598 (Alaska 1990) (same).   Nevertheless, courts persist that simply alleging a bad faith claim against an insurer does not disrupt earlier holdings on the attorney-client privilege in litigation with the insured.   *Hartford Fin. Servs.*, 717 N.E.2d at 1238 ("To permit [plaintiff] access to the documents simply because it asserted a bad faith claim against Hartford would ignore the basic premise of protecting the attorney-client privilege."); *Montana Second Judicial Dist.*, 783 P.2d at 916 ("An insurance company must have an honest and candid evaluation of a case, possibly including a 'worst case scenario.'   A concern by the attorney that communications would be discoverable in a bad faith suit would certainly chill open and honest communication."); *General Acc. Fire & Life Assur. Corp. v. Mitchell*, 259 P.2d 862, 868-69 (Co.

8

1953) (in garnishment action against insurance company for underlying negligence case against insured, plaintiffs were not entitled correspondences between insured and insurer).

The Kentucky Supreme Court's discussion of the attorney-client privilege in third-party bad faith litigation, the language of *George* rejecting an outright exception to the attorney-client privilege in a bad faith case, and the adherence to the insured-insurer communications privilege persuades the Court that state law protects the insurance file in third-party bad faith litigation to the extent materials within are cloaked in the attorney-client privilege.

## II. Attorney's work product privilege

The same can be said for the work-product privilege.   "The work-product doctrine protects an attorney's trial preparation materials from discovery to preserve the integrity of the adversarial process." *In re Professionals Direct Ins. Co.*, 578 F.3d 432, 438 (6th Cir. 2009) (citation omitted).   Rule 26 of the Federal Rules of Civil Procedure governs the attorney work-product privilege.   The rule precludes the discovery of "documents and tangible things that are prepared in anticipation of litigation or for trial by [a party's attorney]."   Fed. R. Civ. P. 26(b)(3)(A).   This prohibition may be overcome if the party petitioning for the materials shows "it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."   *Id*. § 26(b)(3)(A)(ii).

Again, courts in other jurisdictions have openly diagramed how the parameters of the work-product doctrine function in third-party bad faith cases.   *See Gaughan*, 508 S.E.2d at 75. While Kentucky courts have not offered such explicit guidance, the Sixth Circuit has.   In an unpublished decision, the Sixth Circuit considered the role of the work-product rule in bad faith actions under Kentucky law.   In *Bongartz v. State Farm Fire & Cas. Co.*, 30 F.3d 133 (6th Cir.

1994) (table), the appeals court reviewed the grant of summary judgment against plaintiffs where they asserted claims under the UCSPA.   *Id*. at *1.   In the underlying dispute between the parties, the defendant-insurer denied coverage for fire damage in plaintiff's residence.   *Id*.   Besides the unfavorable ruling on dismissal, the plaintiffs appealed the decision by the trial court to deny a discovery request for the insurance file because it was prepared in anticipation of litigation.   *Id*. at *4.   The court of appeals upheld the district court's ruling that work product "created by defendant . . . in anticipation of litigation" was not discoverable and the plaintiff had not shown a substantial need for such materials to prepare her claims of bad faith.   *Id*. at *5.   *Bongartz* convinces the Court that the work-product privilege is alive and well, to some extent, in bad faith litigation under Kentucky law.

Plaintiff may argue that all attorney work-product material is discoverable in this case, but legal precedent stubbornly resists this interpretation.   The Court will review the current discovery requests through the prism of these findings.

## III. Plaintiff's interrogatories and requests for discovery

Circling back to the case at bar, Progressive has objected to nearly every interrogatory and request for production Plaintiff has propounded upon it.   In response, Plaintiff has moved the Court to compel Progressive to answer every objected-to interrogatory and cooperate with every request for production.   The Court will proceed by addressing the insurance file first and then discussing the individual interrogatory responses and requests for production.

### A. Insurance file

The thrust of the discovery requests and briefing revolves around the insurance file Progressive created during the underlying action.   The file is roughly 1300 pages in length and

10

contains a variety of documents, including Yonts's motor vehicle policy, a bodily injury evaluation form, criminal investigation forms about the accident, and other non-privileged material.   Plaintiff relays that these documents were previously disclosed by Progressive.   The points of contention arise with the records pertaining to the processing and handling of the earlier claim against Yonts.   Progressive insists these materials would include documents memorializing the correspondences between Yonts and its employees, where the parties discussed issues related to his legal representation.

Plaintiff declares that Progressive has withheld 545 pages of the insurance file and placed 132 redactions in the file's system notes.   Of the pages that are disclosed from the insurance file, Plaintiff indicates Progressive declined to include a single page of how the earlier claim was handled.   Progressive has also omitted the identities of several persons whose initials appear on documents within the file.   Further drawing the Plaintiff's ire is Progressive's decision to hold back the records of its communications with Yonts's father, who apparently paid the premiums on the policy for his son and coordinated with the company during the underlying action.   In its response, Progressive asserts the documents it refuses to turn over are protected by the attorney-client privilege.

The conclusions reached above about communications between an insurer and insured and the general reticence of courts to discard the attorney-client privilege at the first sight of bad faith litigation accentuate Progressive's explanation.   Nevertheless, the Court could not possibly rule on the privilege issues before it without first examining the portions of the insurance file Progressive has decided to withhold.   Blanket claims of attorney-client privilege are discouraged, in particular where its covers information that would be relevant and probative of material facts.

11

*See Griggs v. Commonwealth*, No. 2002-CA-000562-MR, 2003 WL 22745707, at *7 (Ky. Ct. App. Nov. 21, 2003) ("The attorney-client privilege is not a broad rule of law which interposes a blanket ban on [relevant evidence]." (quoting *United States v. Pipkins,* 528 F.2d 559, 562 (5th Cir. 1976))).   The scope of discovery for the instant matter demands "the production of all documents and material pertaining to any negotiations or offers of settlement."   *Terrell*, 427 S.W.2d at 825. To make sure Plaintiff receives the discovery to which he is entitled, the Court will require Progressive to submit the insurance file for an *in camera* review.   Progressive must indicate which documents have been provided and which have yet to be produced.

**B. Interrogatories and Requests for Production**

Below, the Court issues its rulings on Plaintiff's interrogatories and requests for production:

(1) <u>Interrogatories 1, 2, 3, 4, and 5</u>: Progressive's objections are sustained.   These questions either ask for irrelevant information or have been sufficiently answered by Progressive.

(2) <u>Interrogatories 8, 13, 14, 15, 17, 18, 19, 20, 21, and 22</u>: Progressive's objections are sustained in part and overruled in part.   To the extent Progressive has promised to turn over internal policies and procedures for evaluating claims after the parties execute an agreed protective order, the objections are sustained. Plaintiff must show cause why the execution of such an order would not service his discovery needs.   Furthermore, to the extent Plaintiff seeks portions of the insurance file that the Court will review *in camera*, the objections are sustained.
      Plaintiff propounds interrogatories seeking information on the separate UIM claim under Shaheen's policy.   These discovery requests are improper because they seek irrelevant information.   The foundation of this lawsuit rests on Progressive's alleged bad faith in refusing to settle the underlying action in a timely manner.   Plaintiff's complaint does not seek to recover for Progressive's actions regarding the UIM claim or allege any improper motivation by Progressive in how it managed and settled the UIM policy.   The varying considerations for Progressive when confronting the UIM claim highlight why these interrogatories focus on information unrelated to the instant matter.   Progressive's objections are sustained.
      Progressive must comply with the holding of *Grange Mut. Ins. Co. v.*

*Trude*, 151 S.W.3d 803 (Ky. 2004). Interrogatory 19 seems to request information that could be construed as "job performance and disciplinary information" of the adjusters handing Plaintiff's claim, "personnel records relat[ing] to compensation", and "how overall compensation works" at Progressive. *Id*. at 815. This information is discoverable and must be disclosed.

Additionally, Plaintiff is entitled to information on other third-party bad faith claims in Kentucky that could reveal a pattern of bad faith conduct. *Id*. With Interrogatories 20, 21, and 22, Progressive impermissibly narrows the scope of discovery by restricting its disclosures to third-party bad faith claims "where a demand for payment without release" was the subject of the suit. In answering these interrogatories, the Court believes it is sufficient if the claims are simply third-party bad faith suits. Progressive must comply with Interrogatories 20, 21, and 22 with this in mind.

(3) <u>Requests for production 1, 3, 15, 33, 34, and 35</u>: Progressive agrees to disclose these items, mostly corporate policies and procedures, if the Plaintiff will execute a confidentiality agreement. The Court believes this concession is reasonable. Plaintiff must show cause why execution of a confidentiality agreement would be improper under these circumstances. If not, the Court may sustain Progressive's objection.

(4) <u>Requests for production 5, 8, 17, 18, and 19</u>: Progressive's objections are sustained. These requests seek irrelevant information on the UIM claim and are overly broad. Progressive has also substantially complied with its obligations under these requests.

(5) <u>Requests for production 21 and 22</u>: Progressive's objections are overruled. Similar to the Interrogatories 20, 21, and 22, Progressive must answer these requests to the extent there were other third-party bad faith suits filed against it from 2000 to 2009 in Kentucky.

## IV. Crime-fraud exception and waiver of attorney-client privilege

In his response, Plaintiff advances that the attorney-client privilege does not protect the insurance file in Progressive's possession because the privilege has been waived or cannot apply because Progressive has engaged in fraudulent conduct. Nothing in the record would permit the Court to reach such a conclusion, least of which, the conclusory portions of Plaintiff's motion making these assertions. Thus, the Court declines to further discuss these parts of Plaintiff's

13

motion.

## V. Motion for summary judgment and schedule

During the pendency of this motion to compel, Progressive has moved for summary judgment (DN 42).   It has also asked for an extension of time to file other dispositive motions, as the Court's decision on the motion to compel will undoubtedly affect the evidentiary basis for future motions (DN 41).

The Court will deny both motions with leave to refile, and vacate the current schedule for this matter.   The Court will require some time to review the insurance file *in camera* and decide whether certain documents are discoverable.   Following this ruling, the Court will create another schedule and issue new dates for the filing of dispositive motions.

## CONCLUSION

As a final note, while the Court has examined the contours of the claimed privileges and how they mesh with to third-party bad faith claims, the application and balance of these privileges to the instant matter is still an unresolved issue.   The Court withholds the right to reevaluate the above-stated law after it reviews the insurance file, should it feel the need to do so.

IT IS HEREBY ORDERED

(1) Plaintiff's motion to compel (DN 32) is GRANTED IN PART AND DENIED IN PART.   The Court will conduct an *in camera* review of the insurance file at issue. Defendant shall submit the file in its entirety to the Court at its earliest convenience. Progressive shall takes steps to indicate which segments have been withheld from the Plaintiff and why it believes those particular segments contain privileged information. As for Plaintiff's specific interrogatories and requests for production, the parties must

14

abide by the Court's above-stated rulings.

(2) Defendant's motion for summary judgment (DN 42) and motion for an extension (DN 41) are DENIED.   Defendant is granted leave to refile these motions once the Court has conducted the *in camera* review.

(3) The current schedule is hereby VACATED.   The Court will issue a new schedule after it conducts the *in camera* review.