UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:08-CV-00034-R

**JOSEPH SHAHEEN,**                                                                         **PLAINTIFF**
**Ancillary Administrator of the Estate of**
**NADIA SHAHEEN, deceased**

v.

**PROGRESSIVE CAS. INSUR. CO.**                                      **DEFENDANT**

### MEMORANDUM AND ORDER

This matter originally came before the Court on Plaintiff's motion to compel discovery responses from Defendant (DN 32). The Court granted in part and denied in part Plaintiff's motion to compel. Memorandum & Order, DN 44. It then ordered Defendant to submit the insurance file at issue for an *in camera* review. The Court has conducted that review and makes the following rulings.

### BACKGROUND

This is a third-party bad faith claim between Defendant Progressive Casualty Insurance Company ("Progressive") and Plaintiff Joseph Shaheen ("Plaintiff"), who is the administrator of Nadia Shaheen's ("Shaheen") estate. Plaintiff filed this action on March 4, 2008, citing violations of Kentucky's Uniform Claims Settlement Practices Act ("UCSPA"), KRS § 304.12-230. The gravamen of Plaintiff's allegations is Progressive impermissibly delayed payment on Plaintiff's claim against an insurance policy purchased by Burgess Harrison Yonts ("Yonts").

The instant action has its origins in a fatal car accident near Murray, Kentucky. On November 11, 2005, Yonts struck Shaheen with his car as she walked along the side of the road.

Shaheen suffered grievous injuries and died as a result. Yonts was legally intoxicated at the time. Criminal charges were brought against Yonts and he was eventually convicted of wanton murder. On October 17, 2006, Plaintiff initiated a civil action in this Court against Yonts and others for the wrongful death of Shaheen ("Underlying Lawsuit").

At the time of the accident, Yonts was insured through a policy maintained by Progressive. The policy covered Yonts' parents as well, Brent and Janice Yonts ("Mr. or Mrs. Yonts"). Progressive retained counsel to represent Yonts, as was required by the insurance agreement. Between March and April of 2007, Plaintiff and Yonts' attorneys engaged in settlement negotiations. On March 20, 2007, Plaintiff made a demand that Progressive unconditionally pay $250,000, the limit of the insurance policy. Yonts' attorney agreed to such an amount but only if Plaintiff would agree to dismiss and release all claims against Yonts. Plaintiff rejected the counteroffer. The Underlying Lawsuit continued until April 19, 2009, when Progressive tendered the policy limit unconditionally. Judgment was entered in excess of the policy coverage on August 14, 2010, and satisfaction of judgment occurred on October 18, 2010.

The present litigation is a third-party bad faith action under the UCSPA. Plaintiff asserts that Progressive unreasonably chose not to pay the full limit on Yonts' policy even though liability was never in doubt. During discovery, Plaintiff sought disclosure of the insurance file Progressive created during the Underlying Lawsuit. He stated that the file contained important and probative information on Progressive's refusal to settle his claim. In spite of these discovery requests, Progressive refused to produce nearly half of the insurance file, contending that it was replete with documents that recorded communications between Yonts and insurance representatives. Progressive declared that these correspondences, along with documents its

attorneys created during the Underlying Lawsuit, were protected by the attorney-client and work-product privileges.

On March 2, 2012, the Court issued an order on Plaintiff's motion to compel. Memorandum & Order, DN 44. It examined the law surrounding the attorney-client privilege in the context of third-party bad faith cases, concluding that the doctrine had not been addressed directly by the Kentucky Supreme Court. Memorandum & Order, DN 44 p. 4-9. However, the Court commented that, given the policy behind these privileges, Kentucky law would likely protect "the insurance file in third-party bad faith litigation to the extent materials within [were] cloaked in the attorney-client privilege." Memorandum & Order, DN 44 p. 9. The Court then requested Progressive to submit the insurance file for an *in camera* review to ascertain which segments were covered by the privilege.

## STANDARD

Rule 26 of the Federal Rules of Civil Procedure authorizes broad discovery and is construed by courts as granting litigants access to a wide array of materials. *See Ward v. American Pizza Co.*, 279 F.R.D. 451, 457 (S.D. Ohio 2012) (citations omitted). "Any matter that is relevant, in the sense that it reasonably may lead to the discovery of admissible evidence, and is not privileged, can be discovered." *Id.* "'[A] court is not permitted to preclude the discovery of arguably relevant information solely because if the information were introduced at trial, it would be 'speculative' at best.'" *Id.* (quoting *Coleman v. American Red Cross,* 23 F.3d 1091, 1097 (6th Cir. 1994)). Still, "[t]he [rules of discovery] make clear that privileged material, even relevant privileged material, is not discoverable." *In re Lott*, 424 F.3d 446, 452 (6th Cir. 2005).

## DISCUSSION

The crux of the controversy regards the extent to which a third party may discover an insurance file during third-party bad faith litigation. Neither Plaintiff nor Progressive disputes that the materials redacted from the insurance file would constitute information "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Instead, Progressive protests that these items were created during Yonts' legal representation and are therefore privileged. To resolve the debate, the Court weighs the claims of privilege with the realization that in bad-faith cases, insurance companies possess a near monopoly over the evidence most relevant to the litigation. *See State ex rel. Allstate Ins. Co. v. Gaughan*, 508 S.E.2d 75, 91 (W.Va. 1998).

"In a diversity case, the court applies federal law to resolve work product claims and state law to resolve attorney-client claims." *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 472 (6th Cir. 2006) (citations omitted). The attorney-client privilege attaches to a "confidential communication 'made to facilitate the client in his/her legal dilemma and made [either by] . . . the client, the client's representatives, the lawyer, or the lawyer's representatives.'" *St. Luke Hospitals, Inc. v. Kopowski*, 160 S.W.3d 771, 776 (Ky. 2005) (quoting *Haney v. Yates*, 40 S.W.3d 352, 355 (Ky. 2001)). "A communication is 'confidential' if not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." Ky. R. Evid. 503(a)(5). Though broad claims of privilege are discouraged "when balanced against the need for litigants to have access to relevant or material evidence", *Meenach v. General Motors Corp.*, 891 S.W.2d 398, 402 (Ky. 1995) (citing *United States v. Nixon,* 418 U.S. 683 (1974)), "the privilege is not overridden by necessity or lack of available

4

alternative sources." *Kopowski*, 160 S.W.3d at 777.

Claims of attorney-client privilege often collide with legitimate requests for discovery in bad-faith litigation. Bad-faith claims generally fall into two categories: (1) first-party bad faith, where the insured sues the insurer for failing to use good faith to resolve the insured's claim, and (2) third-party bad faith, where the victim of the insured's tortious behavior sues the insurer for failure to reach a settlement with the victim in good faith. *See Guaranty Nat. Ins. Co. v. George*, 953 S.W.2d 946, 950 (Ky. 1997). In first-party litigation, the entire insurance file is generally discoverable. *See*, *e.g.*, *Minter v. Liberty Mut. Fire Ins. Co.*, No. 3:11CV–249–S, 2012 WL 2430471, at \*2 (W.D. Ky. June 26, 2012); *Dumas v. State Farm Mut. Auto. Ins. Co.*, 274 A.2d 781 (N.H. 1971); *Groben v. Travelers Indem. Co.*, 49 Misc. 2d 14, 15 (N.Y. Sup. Ct. 1965); *Chitty v. State Farm Mut. Auto. Ins. Co.*, 36 F.R.D. 37 (D.S.C. 1964). Issues of privilege raised by insurance companies are often discarded with these cases because the insurance file was created by the insurer on the insured's behalf. *See Silva v. Basin Western*, 47 P.3d 1184, 1192 (Colo. 2002).

Questions of discovery are less definite in third-party bad faith actions. On one hand, almost all of the evidence of an insurer's potential bad faith in failing to settle was created either proceeding up to or during the legal action against the insured. It contains confidential communications between the insured and the attorney retained by the insurance company; thus, much of the insurance file maintained by the insurer necessarily raises issues of attorney-client or work-product privilege. *Cf. Bellmann v. District Court of Cnty. of Arapahoe*, 531 P.2d 632, 634 (Colo. 1975). On the other hand, the evidence that would most assist the plaintiff to show bad faith on the part of the insurer is the communications maintained in the insurance file. "Often, the plaintiff in a third-party bad faith suit has no reasonable means of proving his or her claim without

5

the benefit of certain documents contained in the claim file." *Gaughan*, 508 S.E.2d at 91. Courts are caught between the competing interests of protecting privileged communications and releasing the most impactful evidence.

Courts around the country have taken differing approaches on the degree to which the insurance file is discoverable in claims for third-party bad faith. Some jurisdictions permit discovery of the entire file. *E.g.*, *Allstate Indem. Co. v. Ruiz*, 899 So. 2d 1121 (Fla. 2005); *Dunn v. National Sec. Fire & Cas. Co.*, 631 So.2d 1103 (Fla. Dist. Ct. App. 1993). Others provide standing for insurers to assert the privilege and prevent disclosure by rigidly applying the attorney-client privilege. *See*, *e.g.*, *Twin City Fire Ins. Co. v. Burke*, 63 P.3d 282 (Ariz. 2003); *Hartford Fin. Serv. Grp., Inc. v. Lake Cnty. Park & Recreation Bd.*, 717 N.E.2d 1232 (Ind. Ct. App. 1999); *State ex rel. U.S. Fidelity & Guar. Co. v. Montana Second Judicial Dist. Court*, 783 P.2d 911 (Mont. 1989). West Virginia permits the insurer to withhold privileged portions of the insurance file insofar as the plaintiff cannot show a compelling need for the material and insured has executed a release for the file. *Gaughan*, 508 S.E.2d at 91. To date, the Kentucky Supreme Court has not addressed the issue.

### I.   Claims of Privilege and Kentucky's law on Bad Faith

Previously, the Court reserved the right to reexamine its position on the contours of Kentucky's attorney-client privilege and the impact of discovery in third-party bad faith litigation. Memorandum & Order, DN 44 p. 14. Despite this initial reticence to predict the posture of state law, the Court believes that the Kentucky Supreme Court would sanction both the attorney-client and work-product privileges in cases of this tenor.

The Kentucky Supreme Court has thrice reviewed the limits of discovery in bad faith

claims.  *See Grange Mut. Ins. Co. v. Trude*, 151 S.W.3d 803 (Ky. 2004); *Riggs v. Schroering*, 822 S.W.2d 414 (Ky. 1991); *Terrell v. Western Cas. & Sur. Co.*, 427 S.W.2d 825 (Ky. 1968).  While none confronted the limits of discovery when matters of privilege were raised, the court offered clues on the application of the attorney-client privilege.  In *Riggs*, the court recognized that the boundaries of discovery were influenced by the doctrine.  *Riggs*, 822 S.W.2d at 415 ("The real question presented is what type of discovery limitations are needed to restrict the scope of the examination of the attorneys as necessary to protect the attorney/client privilege.").  The issue went unresolved only because the parties conceded that discovery beyond the limits of the privilege would not occur.  *Id*.  Still, *Riggs* implied that the breadth of discovery was impacted by privileged information.

Further, the Kentucky Court of Appeals has rejected the opportunity to create an exception to the attorney-client privilege in bad-faith litigation.  *See George*, 953 S.W.2d at 946.  In *George*, the intermediate appellate court reviewed a decision where summary judgment had been granted by the trial court in the defendant's favor.  *Id*. at 947-48.  The plaintiffs appealed two issues: if summary judgment was appropriate and whether the trial court erred when it discarded the plaintiff's request to discover a correspondence between the insured's attorney and the insurer, written during the preceding coverage claim.  *Id*. at 948.  The court of appeals rejected the plaintiff's proposal that an exception to the attorney-client privilege arose out of bad faith claims:

> To develop an exception in bad faith cases against insurers would impede the free flow of information and honest evaluation of claims. In the absence of fraud or criminal activity, an insurer is entitled to the attorney-client privilege to the same extent as other litigants.

*Id*. at 948 (quoting *George v. Guaranty Nat'l Insur. Co.*, No. 95-CA-1577-MR (Slip Op. Mar. 8, 1996)).  Kentucky's highest court failed to reach the privilege issue, concluding instead that

7

summary judgment was properly granted. Though the question of privilege in *George* was addressed in a different context, the appeals court's ruling is the best guidance on Kentucky law and whether bad faith actions subvert the attorney-client privilege.

Kentucky also extends a confidential privilege to the conversations between an insured and the insurer. *Asbury v. Beerbower*, 589 S.W.2d 216 (Ky. 1979). The Kentucky Supreme Court first adopted the privilege in *Asbury*, where a third-party attempted to discover statements that passed between an insured and insurer. *Id.* at 216. The court recognized the privilege on the basis that it was safe for the insured to assume that the dominant purpose for a communication with the insurer was to transmit information to an insurer-selected attorney for the pending litigation. *Id.* at 217. Other jurisdictions extend similar protection to insurers and insureds when they converse under the specter of litigation. *Montana Second Judicial Dist.*, 783 P.2d at 916; *General Acc. Fire & Life Assur. Corp. v. Mitchell*, 259 P.2d 862, 868-69 (Co. 1953). This additional layer of privilege for communiques to and from insurance companies persuades the Court that discovery of the insurance file is restricted by Kentucky's laws on the attorney-client privilege.

Federal law takes a similar stance with the work-product privilege. "The work-product doctrine protects an attorney's trial preparation materials from discovery to preserve the integrity of the adversarial process." *In re Professionals Direct Ins. Co.*, 578 F.3d 432, 438 (6th Cir. 2009) (citation omitted). Rule 26 of the Federal Rules of Civil Procedure, which governs the work-product privilege, precludes the discovery of "documents and tangible things that are prepared in anticipation of litigation or for trial by [a party's attorney]." Fed. R. Civ. P. 26(b)(3)(A). The prohibition may be overcome only if the party seeking disclosure of the materials proves "it has substantial need for the materials to prepare its case and cannot, without

undue hardship, obtain their substantial equivalent by other means." *Id*. § 26(b)(3)(A)(ii).

In *Bongartz v. State Farm Fire & Cas. Co.*, 30 F.3d 133 (6th Cir. 1994) (per curiam) (table), the Sixth Circuit considered the role of the work-product rule in bad faith actions under Kentucky law. There, the appeals court reviewed the grant of summary judgment against plaintiffs where they asserted claims under the UCSPA. *Id*. at *1. In the dispute between the parties, the defendant-insurer denied coverage for fire damage to the plaintiff's residence. *Id*. Besides the unfavorable ruling on dismissal, the plaintiff appealed the trial court's decision denying a discovery request for the insurance file. *Id*. at *4. The court of appeals upheld the district court's ruling that work product "created by defendant . . . in anticipation of litigation" was not discoverable and the plaintiff had not shown a substantial need for such materials to prepare her claim of bad faith. *Id*. at *5. Again, other courts have sustained insurers' objections to releasing attorney work product in third-party bad faith actions. *Gaughan*, 508 S.E.2d at 92 ("An insurer may raise the work product rule with respect to any document it believes is protected from disclosure by the work product rule.").

## II.     Application of law to Present Matter

Before the application of the attorney-client and work-product privileges to the insurance file, the Court must describe the materials Progressive has redacted. In a legal brief submitted alongside the insurance file, Progressive proposes that communications passing between ten different individuals are privileged and not subject to discovery. Speaking on behalf of the company and coordinating Shaheen's claims were two of Progressive's claims handlers. The "insureds" to whom the assorted privileges attach are Yonts and Mr. Yonts.[1] Furthermore, six

---

1. Though Progressive excludes her as a participant during its briefing, Mrs. Yonts also spoke with Progressive's representatives and attended "a brainstorming session" on May 13, 2006. Bates No. PC 41-42. The Court presumes

lawyers retained by Yonts at one time or another are included on Progressive's list of people whose communications are privileged. These attorneys represented Yonts in either the criminal matter subsequent to the accident or the Underlying Lawsuit pursued by Shaheen on behalf of his mother's estate. To summarize, Progressive argues that all communications between Yonts, Mr. Yonts, and Progressive's claims representatives, as well as interactions between Yonts' attorneys and Progressive's claims representatives, are covered by the attorney-client and work-product privileges. Notwithstanding these broad assertions, the Court applies a more fact-intensive review of the insurance file.

For ease of discussion, the Court has divided the portions of the insurance file withheld by Progressive into four categories. The first category concerns segments of the insurance file detailing discussions between Yonts and the claims handlers, *e.g.*, Bates No. PC 21-22[2], or communications between Yonts' attorneys and claims handlers in which discussions with Yonts are revealed, *e.g.*, Bates No. PC 18, 73-74, 87, 279, 284-86, 369-70, 378-80, 874. To specify, these entries in the insurance log denote information passed from Yonts, either directly or indirectly, to Progressive's claims handlers. The Court finds that these portions of the claims file fall within the ambit of the attorney-client privilege and are not discoverable by Plaintiff. Many regard sensitive information about the criminal and civil matters Yonts faced in the accident's wake. Judging from its content and context, the information was relayed to Progressive's representatives because they were coordinating the legal response to the Underlying Lawsuit. This is precisely the type of correspondence the insurer-insured communication privilege was

---

that this omission was an oversight on the part of defense counsel.

2. In describing the four categories, the Court has cited to exemplary passages within the insurance file. These lists are by no means exclusive. Progressive must reexamine the portions of the insurance file that it has redacted and determine which parts are discoverable in light of the Court's ruling.

fashioned to protect. The fact that some of these communiques were between Yonts' attorneys and Progressive's representatives is of no import; other courts have held that discussions between multiple attorneys working in concert on behalf of a single client are privileged if based on client communication. *Continental Cas. Co. v. St. Paul Surplus Lines Ins. Co.*, 265 F.R.D. 510, 529 (E.D. Cal. 2010) (collecting cases). Accordingly, Progressive need not disclose these portions of the insurance file.

The second category of redactions is more aptly characterized as the work product of Yonts' attorneys. The work product displayed in the insurance file can be subdivided into portions that reference the factual investigation performed by Yonts' defense team, *e.g.*, Bates No. PC 30, 44, 46, 54, 66, 72, 75, legal strategy for the criminal and the Underlying Lawsuit that his attorneys imparted to Progressive's claims handers, *e.g.*, Bates No. PC 33, 34-35, 37-39, 51, 60, 66, 72, and summaries of depositions and in-court proceedings submitted to the claims handers with his attorneys' opinions, *e.g.*, Bates No. PC 58, 262-64, 888-900, 908-27, 929-50, 1054. Collectively, these documents present observations about the Underlying Lawsuit and the criminal matter with the subjective impressions of Yonts' legal counsel. After review, the Court concludes that these segments of the insurance file implicate the work-product privilege and that Plaintiff has failed to offer an adequate rationale to justify their disclosure. *See* Fed. R. Civ. P. 26(b)(3)(A).

In relevant part, the work-product doctrine codified in Rule 26 of the Federal Rule of Civil Procedure provides that:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
> (i) they are otherwise discoverable under Rule 26(b)(1); and

>> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Fed. R. Civ. P. 26(b)(3)(A)(i)-(ii). The rule establishes two types of work product: "fact work product, which is discoverable upon a showing of substantial need and undue hardship, and opinion work product, which is virtually undiscoverable." *U.S. Fire Ins. Co. v. City of Warren*, No. 2:10-CV-12128, 2012 WL 2190747, at *4 (E.D. Mich. June 14, 2012) (citations omitted). An important distinction between the attorney-client and work-product privileges is that that latter "does not exist to protect a confidential relationship but promotes the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent." *Picard Chemical Inc. Profit Sharing Plan v. Perrigo Co.*, 951 F. Supp. 679, 689 (W.D. Mich. 1996). The privilege is therefore vested with and may be asserted by the attorney who performed the work. Likewise, because the prohibition assures that an attorney may establish a "zone of privacy in which an attorney can investigate, prepare, and analyze a case", *In re Grand Jury Subpoena Dated Nov. 8, 1979*, 622 F.2d 933, 935 (6th Cir. 1980) (citation omitted), the general prohibition on the discovery of work-product materials continues even after the litigation for which it was created ends. *Id*. (collecting cases).

Given the posture of actions for third-party bad faith, the facts of the Underlying Lawsuit are largely irrelevant. Rather, Plaintiff's discovery request implicates the opinion work product created by Yonts' attorneys. Many of the redactions the Court has lumped into the second category were created to update Progressive's claims handlers on the outcome of the criminal trial or the progress of the Underlying Lawsuit. Others memorialized the methods of Yonts' defense team and the information that they were able to gather during their fact investigation. As these

redactions incorporate the attorneys' opinions and legal reasoning, the Court is disinclined to release them to Plaintiff. Courts in other jurisdictions have expressed a similar reticence in discarding the work-product privilege during third-party bad faith litigation. *See*, *e.g.*, *Silva*, 47 P.3d at 1192; *Gaughan*, 508 S.E.2d at 93. Thus, the portions of the insurance file covered by the second category are not discoverable.

For the third category, the Court has located within the insurance file numerous references by Yonts' attorneys and Progressive's claims representatives to conversations with Mr. and Mrs. Yonts. *E.g.*, Bates No. PC 6-9, 15, 29-30, 41-42, 46-47, 255, 356-57, 397, 506, 1045. [3] On at least one occasion Mr. Yonts, an attorney by trade, made important legal decisions regarding the Underlying Lawsuit and informed Yonts' attorneys and Progressive's representatives of his son's wishes. *See* Bates No. PC 1045. Although Progressive does not expressly state that these communications are covered by the attorney-client privilege, the Court presumes that such an argument would emerge were the issue to be pressed.

These portions of the insurance file are not protected by Kentucky's attorney-client privilege because the communications were revealed to third-parties not involved in Yonts' representation. The burden of establishing the existence of the attorney-client privilege lies with the party who seeks to assert its protections. *Futrell v. Shadoan,* 828 S.W.2d 649, 651 (Ky. 1992); *see In re Grand Jury Investigation No. 83-2-35,* 723 F.2d 447, 450 (6th Cir. 1983). Communications that occur in confidence between an attorney and a client are stripped of their confidentiality as well as the protection of the attorney-client privilege if the client voluntarily

---

[3] The Court believes that the privilege log incorrectly attributes correspondences to Yonts when actually it was Mr. Yonts with whom the attorneys or Progressive's representatives were speaking. *E.g.*, Bates No. PC 74, 98-99. Progressive must reexamine its redactions to confirm its privilege log accurately reflects the nature of the communications that it has redacted.

13

discloses them to a third party. *Lexington Public Library v. Clark, Ky.,* 90 S.W.3d 53, 61 (Ky. 2002); *accord* Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 5.05[10], at 361 (4th ed. 2003) ("A client who discloses protected communications to persons outside the lawyer-client relationship (or authorizes legal counsel to do so) waives the protection of the privilege."). Additionally, the attorney-client privilege does not shield from disclosure any statements made by the client to his attorney in the presence of a third party. *Reed v. Baxter,* 134 F.3d 351, 357 (6th Cir. 1998); *see United States v. Hodges,* 448 F.2d 1309, 1313 n. 5 (6th Cir. 1971).

The Court confronted a similar argument in the Underlying Lawsuit when the litigants proceeding against Yonts sought to depose his parents. *See El Bannan v. Yonts*, No. 5:06-cv-173-R, 2007 WL 1428653, at *1 (W.D. Ky. May 11, 2007). There, Yonts tried to preclude the plaintiff from questioning Mr. or Mrs. Yonts because certain statements were covered by the attorney-client privilege. *Id*. at *3. This Court rejected the argument, as Yonts had failed to produce any evidence that Mr. or Mrs. Yonts was acting as a legal advisor or member of his legal team. *Id*.

In light of its previous opinion, the Court finds Progressive's decision to redact these segments of the insurance file incorrect. The company makes no attempt to show that either Mr. or Mrs. Yonts were working in some legal capacity when they spoke with Yonts' attorneys or Progressive's claims handlers. The fact that his parents were covered under the policy is of no concern, as the Underlying Lawsuit was initiated against Yonts alone. The precedent that establishes Kentucky's version of the insurer-insured privilege makes no reference extending the protection to all individuals covered by the policy. As such, the Court will not prohibit the discovery of these documents.

For the fourth and final category, the vast majority of the documents redacted by Progressive involve benign communications between Yonts' attorneys and the claims handers. *E.g.*, Bates No. 221, 257, 278, 299, 383, 348, 437, 907.[4] Though in the purest sense of the word these entries denote "communications" between his attorneys and the insurance company, they include neither statements to or from Yonts nor work-product by his attorneys. Broadly speaking, these segments of the insurance file recount when certain legal briefs were filed, the payment of legal fees by Progressive, and other innocuous status updates by Yonts' lead counsel. Since these portions do not implicate the attorney-client or work-product privileges, their disclosure is proper.

## CONCLUSION

To reiterate its conclusions about Defendant's claims of privilege, IT IS HEREBY ORDERED:

(1) Portions of the insurance file that relate to and reveal direct discussions or conversations between Harrison Yonts and either his attorneys or Progressive's claims handlers are not discoverable pursuant to Kentucky's attorney-client and insurer-insured privileges. These portions of the insurance file were properly redacted.

(2) Portions of the insurance file where Harrison Yonts' attorneys gathered, examined, or discussed the facts of the Underlying Lawsuit, discussed legal strategy for the criminal and the Underlying Lawsuit with Progressive's claims handlers, or summarized witness depositions or in-court proceedings are not discoverable pursuant to the work-product doctrine under Federal Rule of Civil Procedure 26. These portions of

---

4. Also appropriately placed in this category are the following entries: Bates No. 223, 242, 258, 265, 296, 344, 350, 355, 414, 421, 580, 859, 976, 1051, 1060, 1061, 1126, 1149, 1156, 1180, 1217, 1262.

the insurance file were properly redacted.

(3) Portions of the insurance file that reference communications from or to Brent or Janice Yonts are discoverable.  This includes any portion of the insurance file that memorializes a conversation between Brent and Janice Yonts and Harrison Yonts' attorneys or Progressive's claims handers.  It also includes any portion that memorializes meetings between Harrison Yonts and his attorneys where Brent or Janice Yonts were present.  The Court ORDERS Progressive to reexamine its privilege log to ensure that no entries are mistakenly attributed to Harrison Yonts rather than his parents.

(4) Portions of the insurance file that cover communications between Harrison Yonts' attorneys and Progressive's claims handlers that do not include material fairly characterized as attorney work product or communications with Harrison Yonts are discoverable.  The Court ORDERS Progressive to reexamine its privilege log to ensure that no entries are mistakenly excluded from this category.

The Court ALSO ORDERS:

(1) Defendant shall make these portions of the insurance file available to Plaintiff within fourteen (14) days of this order.

(2) The Court shall conduct a telephonic conference on September 14, 2012, at 8:45 a.m. CST.  There, the Court will set forth another schedule for the parties.  The Court shall initiate the call.