UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:08-CV-00034


JOSEPH SHAHEEN, Ancillary Administrator
of the Estate of Nadia Shaheen, deceased                                        Plaintiff

v.

PROGRESSIVE CASUALTY INSURANCE COMPANY                         Defendant


## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Defendant's Motion for Summary Judgment (DN 67).  Plaintiff has responded (DN 69), and Defendant has replied (DN 74). This matter is now ripe for adjudication.  For the reasons that follow, Defendant's Motion is **GRANTED**.

## BACKGROUND

This is an action for the recovery of insurance proceeds under the Kentucky Unfair Claims Settlement Practices Act ("KUCSPA"), KRS 304.12-230. Defendant Progressive Casualty Insurance Company provided coverage for a vehicle insured by Bret and Janice Yonts and provided to their son, Burgess Harrison Yonts ("Yonts"). In the early morning hours of November 11, 2005, Yonts struck decedent Nadia Shaheen with his vehicle as she was walking home from the computer lab at Murray State University. Yonts was intoxicated. He left the scene and attempted to conceal his wrongful acts. Nadia Shaheen's body was discovered several hours later.

On February 1, 2007, Yonts was convicted of wanton murder, tampering with physical evidence, driving under the influence, and leaving the scene of an accident. He was sentenced to

twenty years in prison on April 9, 2007. His conviction became final after he dropped his appeal and executed an affidavit accepting responsibility for Shaheen's death.

On October 17, 2006, Plaintiff filed suit against Yonts, Yonts' fraternity, individual fraternity members, and a bar that Yonts visited, for recovery of compensatory and punitive damages. The suit alleged wrongful death, and dram shop and negligence theories.

Plaintiff demanded the prompt and unconditional payment of $250,000 from Progressive on March 20, 2007.  On April 18, 2007, Progressive, through Yonts's counsel, offered to pay the $250,000 liability policy limit, conditioned upon the release of all claims against Yonts and dismissal of the suit.  (Docket No. 67-2) ("In exchange, my client will receive a Release Agreement with hold harmless and indemnification language and an Agreed Order of Dismissal with prejudice."). On April 27, 2007, Plaintiff responded that only an unconditional payment of the liability policy limit without releasing the claims against Yonts or Plaintiff's rights to recover all damages assessed against Yonts was acceptable.  Progressive "recognized a release was problematic for Plaintiff because it could prejudice his claims against the other defendants, including his dram shop claims."  (Docket No. 67).

Summary judgment was granted in favor of the fraternity defendants in early 2009, and the dram shop claim was settled in March of 2009.  Trial was to proceed against the only remaining Defendant, Yonts.  Plaintiff then made a settlement proposal that included a specific demand for payment of personal funds by the Yonts family.  It also included a covenant not to execute/collect, providing that Yonts would submit an offer of judgment in the amount of $1.5 million dollars, Progressive would pay the $250,000 liability limit and Yonts' parents would pay $100,000, and if Yonts completed additional conditions including advocacy against alcohol related perils, the remainder of the judgment would not be executed upon or collected.  A draft

2

offer dated April 28, 2009 was eventually accepted and became the agreement that ended the underlying litigation.

Plaintiff now seeks damages from Progressive for violating the KUCSPA. Plaintiff alleges that Progressive violated the act by not responding to his April 27, 2007 demand and by refusing to unconditionally pay its $250,000 policy limit.

## STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

3

The KUCSPA, KRS § 304.12–230, "is intended 'to protect the public from unfair trade practices and fraud' and 'imposes what is generally known as the duty of good faith and fair dealing owed by an insurer to an insured.'" *Phelps v. State Farm Mut. Auto. Ins. Co*., 680 F.3d 725, 731 (6th Cir. 2012) (internal citations omitted) (quoting *State Farm Mut. Auto. Ins. Co. v. Reeder*, 763 S.W.2d 116, 118 (Ky. 1988); *Knotts v. Zurich Ins. Co*., 197 S.W.3d 512, 515 (Ky. 2006)). An insurer's violation of the UCSPA creates a cause of action both for the insured as well as for those who have claims against the insureds, and the same standard applies in both types of cases. *Phelps*, 680 F.3d at 731 (citing *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 454 (Ky. 1999)); *see also Davidson v. Am. Freightways, Inc*., 25 S.W.3d 94, 100 (Ky. 2000) (stating that there is one test for bad faith in Kentucky, which applies equally to bad faith claims brought by first- or third-parties).

KUCSPA requires an insurance company "to deal in good faith with a claimant, whether an insured or a third-party, with respect to a claim which the insurance company is contractually obligated to pay." *Davidson*, 25 S.W. 3d at 100 (emphasis omitted); *see also Reeder*, 763 S.W. 2d at 118 (holding third-party claims may be premised upon a violation of KUCSPA). The duties imposed by KUCSPA on an insurer to a third-party apply both before and after the commencement of litigation by the third-party against the insured. *Knotts*, 197 S.W.3d at 517.

In order to state a claim under the UCSPA, a plaintiff first "must meet a high threshold standard that requires evidence of 'intentional misconduct or reckless disregard of the rights of an insured or a claimant' by the insurance company that would support an award of punitive damages." *Phelps*, 680 F.3d at 731 (quoting *Wittmer v. Jones*, 864 S.W.2d 864, 890 (Ky. 1993)); *see also United Servs. Auto. Ass'n v. Bult*, 183 S.W.3d 181, 186 (Ky. Ct. App. 2003) (describing the requisite threshold as "high indeed"). The Kentucky Supreme Court specifically describes

the standard as that of "outrageous" conduct by the insurer. *Wittmer*, 864 S.W.2d at 890. Stated differently, a plaintiff must show "proof of bad faith . . . sufficient for the jury to conclude that there was 'conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to [her] rights . . . . This means there must be sufficient evidence of intentional misconduct or reckless disregard of the rights of an insured or a claimant to warrant submitting the right to award punitive damages to the jury." *Bult*, 183 S.W.3d at 186 (emphasis in original) (quoting *Wittmer*, 864 S.W.2d at 890). "Mere negligent failure to settle within the policy limits or errors of judgment are insufficient to constitute bad faith." *Motorists*, 996 S.W. 2d at 451 (citing *Harvin v. United States Fidelity & Guaranty Co*., 428 S.W. 2d 213, 215 (Ky. 1968)).

Once a plaintiff has met this initial showing, she must establish three elements to maintain a claim of bad faith:

> (1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.

*Wittmer*, 864 S.W.2d at 890; *accord Phelps*, 680 F.3d at 731.  The court in *Phelps* held that summary judgment granted on the Plaintiff's USCPA claim was improper in part because the district court did not consider the Plaintiff's expert witness testimony.  *Phelps*, 680 F.3d at 733.

In *Knotts v. Zurich Insurance Company*, the Kentucky Supreme Court held that the KUCSPA applies during litigation. 197 S.W. 3d at 517. Justice Cooper, dissenting, highlighted potential problems with the court's holding.  He first noted that both first-party and third-party claims can be premised on a violation of the KUCSPA, but stated that he did not agree that the insurer owes any duty to a third party after that party commences a tort action against the insured.  He explained that:

> When the tort plaintiff commences the tort action against the insured tortfeasor, the insurer's primary obligation is the defense of its insured. If the insurer violates that duty, e.g., by failing to pay a reasonable settlement demand, and such results in an excess judgment against the insured, the insurer can be liable to the insured for the excess, and the insured can make an assignment of the chose in action to the injured plaintiff. However, it makes no sense to say that the insurer is answerable to the tort plaintiff for the manner in which it performs its contractual duty to defend its insured against the tort action. The potential for a conflict of interest in that scenario is self-evident.

*Id.* (Cooper, J., dissenting) (internal citations omitted).

Finally, he notes that "[a]n overwhelming majority of jurisdictions . . . do not allow any third-party bad faith actions whatsoever against insurers." *Id.* (noting that only three other states permit these actions – Louisiana, Massachusetts, and West Virginia).

The court in *Motorists* discussed the duties owed to the third party and to their liability insured to protect him from an excess judgment. 996 S.W. 2d at 453. There, a possibly intoxicated driver ran off the road, severing the Plaintiff's arm. *Id.* at 440-41. After extensive negotiations, the Plaintiff sued the driver's insurance companies for a variety of claims, including one under the KUSPCA. *Id.* at 452. The court noted that, "[i]n addition to the duties owed to [the Plaintiff], both insurers owed a duty to their liability insured . . . to protect him from a potential excess judgment. . . . That would include obtaining from the [Plaintiff] a release of all claims against him in exchange for the payment of a liability settlement." 996 S.W.2d at 454 (citing *Coots v. Allstate Insurance Co.*, 853 S.W. 2d 895, 901 (Ky. 1993).

Insurers have duties both to the third party and to their liability insured, which can cause conflicts. Massachusetts is one of the few states that also permits third-party bad faith actions against insurers, and has a similar statute to the KUSPCA. The Massachusetts Supreme Court addressed this factual scenario in *Lazaris v. Metropolitan Prop. & Cas. Ins. Co.*, 703 N.E. 2d 205 (Mass. 1998). In *Lazaris*, the court addressed the question of "whether an insurance company violates [the state's USPCA statute] if it insists that a claimant against one of its insureds release

6

all claims against its insured before it will pay a claim in which liability has become reasonably clear." *Id.* at 205. The court noted that the Massachusetts statute "speaks of 'effectuating 'settlements of claims,'' not the payment of claims." *Id.* at 206. The court discussed the difference between making a payment on a claim and settling that claim, and noted that a settlement typically involves the release or termination of further claims against the tortfeasor. Two Kentucky cases (discussed above) similarly note that insurance companies typically seek a release in these circumstances. *Coots v. Allstate Insurance Co.*, 853 S.W. 2d 895, 901 (Ky. 1993); *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 454 (Ky. 1999)).

> The Massachusetts Supreme Court further explained its decision, stating as follows:
>
> Yet the best that the insurance company can do in effectuating settlement is to offer the policy limit in exchange for a release. As we have said, to pay without a release is not a settlement. The claimant can either accept the offer or proceed to trial. . . .
> If we read [the statute] as requiring payment of the policy limit without a settlement of claims against the insured, then an insurance company would be forced to watch both flanks. On one side, the company may be sued for unfair settlement practices by a claimant disgruntled by the company's failure to pay, and, on the other side, the company may be sued by an insured disgruntled by the company's payment of the policy limit without obtaining a release.

703 N.E. 2d at 206. The court concluded "that a claim is settled within the meaning of [the statute] only when it is fully disposed of, which means that the claimant has released all claims against the insured." *Id.*

In its Motion for Summary Judgment, the Defendant notes that it conditioned its settlement offer upon a release for Yonts, while the Plaintiff demanded the unconditional and immediate payment of the limit. (Docket No. 67). The Defendant argues that under *Coots* and *Motorists*, insurers owe a duty to their insured to protect from excess judgment by obtaining a release of all claims, and that it never ran afoul of its continuing duty to attempt settlement, nor were its offers outrageous or stemming from any evil motive. *Id.* In support, the Defendant

points to the Massachusetts Supreme Court's interpretation of a similar statute in *Lazaris*, where the court held that a claim is settled for purposes of the statute once the claimant has released all claims against the insured.  The Defendant argues that similarly, "Kentucky obligates insurers such as Progressive Casualty to reject payment demands unless there is a settlement concluding the claim." *Id.*

Additionally, the Defendant, citing to *Motorists*, argues that a mere delay in payment is not enough.  *Id.*  Finally the Defendant states that the Plaintiff did not point to any malicious intent and argues that the Plaintiff cannot satisfy the first prong of the *Wittmer* test, because there was no settlement, thus there was no obligation to pay the claim under the terms of the policy.

In response, the Plaintiffs argue that they can show intentional misconduct and reckless disregard through the following conduct by the Defendant: insistence on release as a prerequisite despite the awareness that a release would extinguish the Plaintiff's dram shop claim; violations of policy provisions, claims handling practices, and standards followed by claims adjusters in Kentucky; the fact that the discovery contains no analysis, review, or discussion of the Defendant's obligations; and that the Defendant transferred authority from three adjusters to claims legal group without records of its claim handling.  (Docket No. 69).

The Plaintiff states that Progressive made its decisions based on the will of its client. Plaintiff cites to an email where Timothy Kerwin, regional managing attorney for Progressive, suggested that Donald Killian Brown, Yonts's insurance defense counsel, ask Yonts if he had a preference on what to do.  (Docket No. 69-32).   The claim notes further state that Yonts would not accept the offer without receiving a release. (Docket No. 69-21).  Further, the Plaintiff notes that by April 28, 2009, it submitted a proposal for additional consideration from Yonts above Progressive's policy limits.  Progressive's file indicates that Yonts "has advised D/A Brown [that

Yonts] wants matter resolved." (Docket No. 69-27).  The Plaintiff alleges the reasons for this change were that by May of 2009, Yonts had "devised a strategy to accelerate his relief from incarceration sooner than his eight-year sentence required."  (Docket No. 69).  The Plaintiff cites to an email from Charles Nesselrodt, a claims specialist lead for Progressive, which states that "DA Brown feels the proposal is the only way to extricate our insured driver and correspondingly us from this use and the ongoing litigation. It also appears to be the only basis on which the insured driver can approach the court to petition for early release from prison." (Docket No. 69-15).

The Plaintiff argues that: "KRS 187.400-.420 precludes restoration of driving privileges if an unsatisfied judgment from a motor vehicle accident exists. Faced with the prospect of a near certain judgment at trial which he could never satisfy nor bankrupt, Yonts accepted the terms of our proposal, which did not release him, did not indemnify him, and which resulted in entry of a suitable judgment reflecting the damages he caused, which was not formally satisfied until his release from incarceration in August, 2010."  *Id.*  The Plaintiff notes that the Defendant ultimately accepted the terms without a release.

The Plaintiff included the deposition of expert Dennis Boozer, a former adjuster for State Farm.  Boozer stated that the Defendant violated multiple subsections 3, 4, 6, and 14 of the KUCSPA.  Boozer alleges that "Progressive hid behind their insured's instructions without conducting any further investigation of their own independent obligation to pay Shaheen's claim and without attempting in good faith to resolve their own payment obligation." (Docket No. 66).

The threshold standard for showing bad faith is high indeed, requiring evidence of "intentional misconduct or reckless disregard of the rights of an insured or a claimant."  *See Wittmer*, 864 S.W.2d at 890.  Here, the Defendant immediately offered policy limits, albeit while

requiring a release for its insured.  The Court is doubtful that the conduct alleged by the Plaintiff and detailed above rises to the standard of "outrageous" conduct by the Defendant.  *See id.* Further, mere negligent failure to settle, errors of judgment, and time delay are generally insufficient to constitute bad faith.  *See Motorists,* 996 S.W. 2d at 451 (citing *Harvin v. United States Fidelity & Guaranty Co*., 428 S.W. 2d 213, 215 (Ky. 1968)).

Further, the Court finds the reasoning of the Massachusetts Supreme Court in *Lazaris* to be compelling.  *See Lazaris,*703 N.E. 2d 205 (Mass. 1998).  Kentucky law supports an interpretation of the statute that finds a claim is settled once the claimant has released all claims against the insured.  *See Motorists*, 996 S.W.2d at 454; *Coots*, 853 S.W. 2d at 901.  This Court finds that the Defendant's actions do not rise to the level of bad faith in order to support a claim under the Kentucky USPCA.  Further, the Court follows the Massachusetts Supreme Court and finds that the Defendant did not violate its duties under the KUSPCA, because the claim would only be considered settled once the claimant had released its claims against the insured.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment (DN 67) is **GRANTED**.

10